IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SEAN TODD ROSELAND,                )
                                   )
                    Plaintiff,     )
                                   )    CASE NO.:   08CV3275
        vs.                        )                JUDGE DOW
                                   )                MAGISTRATE JUDGE VALDEZ
NORTHERN TRUST CORPORATION,        )
                                   )
                    Defendant.     )

### DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant Northern Trust Corporation ("Northern Trust") answers Plaintiff's complaint

as follows, and asserts the following affirmative defenses:

Defendant, Northern Trust Corporation ("Defendant") issued a bank ATM card for Sean
Todd Roseland's, ("Plaintiff"), bank account and then, ("in contravention of its own security
protocols"), sent that ATM card along with the PIN number needed to access the Roseland's
account without any restrictive delivery or additional security needed to activate or access the
account.

When persons unknown intercepted the ATM card along with the PIN number for the
card, Roseland's account was drained. Roseland made a dispute and submitted an affidavit and
evidence as to the unauthorized transactions and Northern Trust Bank failed to in good faith
credit his account in accordance with the Electronic Funds Transfer Act, 1.5 U.S.C. § 1693 et.
seq.

Plaintiff brings this action against Northern Trust Bank for its violations of the Electronic
Funds Transfer Act (the "Act") and 12 C.F.R. 205 et seq., commonly known as Regulation E,
which contains regulations promulgated by the Board of Governors of the Federal Reserve
conclusion could not reasonably have been drawn from the evidence available to Northern Trust
at the time of its investigation.

Roseland brings this action against Northern Trust Corporation for its violations of the
Electronic Funds Transfer Act (the "Act") and 12 C.F.R. 205, et seq., commonly kown as
Regulation E, which contains regulations promulgated by the Board of Governors of the Federal
Reserve System to implement the Act (the Act and Regulation E shall hereinafter be collectively
referred to as "EFTA").

**ANSWER:**     The preceding paragraphs are introductory in nature and do not require a

response. To the extent that a response is required, however, Northern Trust admits that Plaintiff

brings this action for alleged violations of the Electronic Funds Transfer Act and Regulation E

(together, the "EFTA") and denies the remaining allegations.

### The Parties

1.       Roseland is an Illinois citizen and resides in this district.

**ANSWER:**    Northern Trust lacks sufficient knowledge to admit or deny the allegations in

paragraph 1 and therefore denies the same.

2.       Northern Trust Corporation is a federal savings bank with its principal place of
business in this district.

**ANSWER:**    Northern Trust denies the allegations contained in paragraph 2.

### Jurisdiction and Venue

3.       This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, because
this action is brought pursuant to the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.*

**ANSWER:**    Northern Trust admits the allegations contained in paragraph 3.

4.       Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the Northern
Trust resides in this district and a substantial part of the events giving rise to Plaintiff's claims
occurred in this district.

**ANSWER:**    Northern Trust admits the allegations contained in paragraph 4.

### Statutory/Regulatory Authority

### EFTA

5.       The Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.* ("EFTA"), and its
implementing Regulation E, 12 C.F.R. § 205.1, *et seq.*

**ANSWER:**    Paragraph 5 contains no allegation.  To the extent that it does, Northern Trust

denies any allegation contained in paragraph 5 and further denies any liability under the EFTA.

### Facts Related to Roseland

6.    On December 26, 2007, Roseland notified his banker, Vicki Shields, about an unauthorized transaction on his account that posted from Travelocity in the amount of $298.80. This transaction was processed using his Visa debit card account, ending in 6731 and was made without his authorization.

**ANSWER:**    Northern Trust admits that on or about December 26, 2008, Plaintiff notified

Vickie Shields of alleged unauthorized activity on his account via his Visa debit card ending in

6731. Northern Trust further admits that the amount in dispute was $298.80. Northern Trust

lacks sufficient knowledge and therefore denies the remaining allegations contained in paragraph

6.

7.    Roseland filed an affidavit with Vicki Shields, and was told that he would receive a provisional credit to his account while the investigation was pending, within ten days.

**ANSWER:**    Northern Trust admits that Plaintiff submitted an affidavit on or about January 28,

2008. Northern Trust further admits that it gave Plaintiff a provisional credit in the amount of

$298.80 on or about January 2, 2008. Plaintiff denies the remaining allegations contained in

paragraph 7.

8.    Roseland was on his way to Chicago O'Hare airport when he received a telephone call from Vicki Shields and another representative from Northern Trust's ATM dispute department asking for more information about the charge.

**ANSWER:**    Northern Trust admits that Vickie Shields spoke with plaintiff about his ATM

charges on or about December 26, 2007. Northern Trust lacks sufficient knowledge to admit or

deny the remaining allegations contained in paragraph 8 and therefore denies the same.

9.    Roseland was then informed that due to Visa regulations, once a dispute is opened, the card in question must be shut down for security reasons, and that Northern Trust would have to issue a new card.

**ANSWER:**    Northern Trust admits the allegations of paragraph 9.

10.    Roseland informed Vicki and the ATM representative that Roseland was en route to the airport, on his way to Florida, and that Roseland would not be back in Chicago for almost a month. Vicki Shields and Northern Trust's ATM representative told Plaintiff they would have

the new ATM card sent to the address where he was staying in Florida.

**ANSWER:**    Northern Trust admits the allegations of paragraph 10.

11.    As another option, Roseland requested that the replacement card be sent to the Northern Trust Branch in Ft Lauderdale, FL, which was the city where Roseland was staying.

**ANSWER:**    Northern Trust lacks sufficient knowledge to admit or deny the allegations of paragraph 11 and therefore denies the same.

12.    Vicki and the ATM representative stated that this was impossible and that the card must be sent to the address where he was staying. Vicki Shields and the ATM representative indicated it would be sent via Federal Express.

**ANSWER:**    Northern Trust admits that it sent to Plaintiff at an address in Florida provided by Plaintiff a replacement ATM card via Federal Express. Northern Trust lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 12 and therefore denies the same.

13.    Roseland informed Vicki and the ATM representative that he would be in and out of his mother's townhouse, located in Ft. Lauderdale, Florida. In turn, Vicki Shields and the ATM representative told him that the replacement card would be sent to that address. This was the end of this conversation.

**ANSWER:**    Northern Trust admits that it sent to Plaintiff at an address in Florida provided by Plaintiff, a replacement ATM card via Federal Express. Northern Trust lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 13 and therefore denies the same.

14.    Between December 26, 2007 and January 1, 2008, Roseland did not receive the card at his mother's townhouse, located in R. Lauderdale, Florida.

**ANSWER:**    Northern Trust lacks sufficient knowledge to either admit or deny the allegations contained in paragraph 14 and therefore denies the same.

15.    Roseland went the Northern Trust branch in Ft. Lauderdale on January 2, 2008. While at the bank on January 2, 2008, Roseland made a deposit in the amount of $6,142.72.

**ANSWER:**   Northern Trust admits the allegations of paragraph 15.

16.     While at the bank on January 2, 2008, Roseland spoke to the teller where he made the deposit and asked the teller about his replacement card. As Roseland had not received the card he inquired as whether the new card had in fact been sent to the address of his mother's townhouse in Florida or alternatively, if it had been sent to his home address in Chicago.

**ANSWER:**   Northern Trust lacks sufficient knowledge to admit or deny the allegations contained in paragraph 16, and therefore denies the same.

17.     The teller informed him that the only address listed in the bank's records on the account was the Chicago account, so the card was probably sent there.

**ANSWER:**   Northern Trust lacks sufficient knowledge to admit or deny the allegations contained in paragraph 17 and therefore denies the same.

18.     As Roseland's mail in Chicago was on hold and he had other means of credit, Roseland did not inquire further.

**ANSWER:**   Northern Trust lacks sufficient knowledge to admit or deny the allegations contained in paragraph 18 and therefore denies the same.

19.     Roseland returned home to Chicago on January 17, 2008.

**ANSWER:**   Northern Trust lacks sufficient knowledge to admit or deny the allegations contained in paragraph 19 and therefore denies the same.

20.     Roseland picked up his mail on January 21, 2008, and there was nothing from the Northern Trust.

**ANSWER:**   Northern Trust lacks sufficient knowledge to admit or deny the allegations contained in paragraph 20 and therefore denies the same.

21.     On or about January 23, 2008, Roseland contacted the receiving room in his building to see if there were any FedEx or UPS deliveries made while he was out of town. The normal clerk was out, and the temp told Roseland that he should check back in the next couple days since the normal clerk was the only one who would know.

**ANSWER:**    Northern Trust lacks sufficient knowledge to admit or deny the allegations

contained in paragraph 21 and therefore denies the same.

22.    Having now exhausted his search in the logical places where the replacement card could have been sent and not having found the replacement card, on Friday January 25, 2008, Roseland went to the Oak Street branch of Northern Trust.

**ANSWER:**    Northern Trust admits that Plaintiff came into the Oak Street Northern Trust

branch office on January 25, 2008.  Northern Trust lacks sufficient knowledge to admit or deny

the remaining allegations contained in paragraph 22 and therefore denies the same.

23.    On that day, Roseland made a deposit of $4,000.00 at the Oak Street branch of Northern Trust at around 5:00 p.m.  At that time, Roseland also made an inquiry as to the account balance.

**ANSWER:**    Northern Trust admits the allegations contained in paragraph 23.

24.    The teller provided Roseland with a balance statement, which showed a balance of $4,070.89 after the $4,000 deposit.

**ANSWER:**    Northern Trust admits the allegations contained in paragraph 24.

25.    In response, Roseland told the teller that the balance couldn't be right. The teller then printed out the account history which showed numerous ATM withdrawals made in Florida, beginning on December 29, 2007, that drained Roseland's account and that were not made by him.

**ANSWER:**    Northern Trust admits that a teller provided Plaintiff with an account history

showing numerous ATM withdrawals made in Florida beginning in December 2007.  Northern

Trust lacks sufficient knowledge to admit or deny the remaining allegations contained in

paragraph 25 and therefore denies the same.

26.    Roseland immediately disputed the unauthorized withdrawals with the teller stating that the withdrawals were not his and not made with his authority.

**ANSWER:**    Northern Trust admits the allegations contained within paragraph 26.

27.    Roseland was then referred to Sue Ann Selle, one of the bankers.

**ANSWER:**    Northern Trust admits the allegations contained in paragraph 27.

28.    Sue Ann Selle pulled Roseland's account information and she said that it showed transactions that took place from December 29, 2007 up until January 25, 2008, and which drained his account. Roseland again disputed the erroneous withdrawals and added that the transactions could not have been made by him as they were made in Florida when he was in Chicago.

**ANSWER:**    Northern Trust admits that Sue Anne Selle discussed with Plaintiff his account history, including transactions occurring in December 2007 and January 2008. Northern Trust further admits that Plaintiff alleged that certain withdrawals were not made by him. Northern Trust lacks sufficient knowledge to admit or deny the remaining allegations contained in paragraph 28 and therefore denies the same.

29.    Ms. Selle then informed Roseland that the bank's information showed that the replacement card and the pin number needed to access the ATM card had been delivered to Roseland's mother's address on December 29, 2007 at the same time.

**ANSWER:**    Northern Trust admits that a replacement ATM card and pin number needed to access the ATM card were delivered under separate cover to a Florida address provided by Plaintiff on or about December 29, 2007. Northern Trust lacks sufficient knowledge to admit or deny the remaining allegations contained in paragraph 29 and therefore denies the same.

30. Roseland asked Ms. Selle if the bank had a signature for the delivery of the ATM card and the PIN number to that card.

**ANSWER:**    Northern Trust lacks sufficient knowledge to admit or deny the allegations contained in paragraph 30 and therefore denies the same.

31.    Ms. Selle informed Roseland that the bank did not have a signature for the delivery.

**ANSWER:**    Northern Trust admits that no signature is on record for the delivery. Northern Trust lacks sufficient knowledge to admit or deny the remaining allegations contained in paragraph 31 and therefore denies the same.

32.    Ms. Selle informed Roseland that the only information the bank had on the delivery of the ATM card and PIN number was that the package was shown as being "delivered." This was false in that, on information and belief, Northern Trust had in their possession information showing the ATM card was merely left at the door of the address to which it was sent and not delivered to a person.

**ANSWER:**    Northern Trust admits that Federal Express left a delivery at the door of the address provided by Plaintiff. Northern Trust lacks sufficient knowledge to admit or deny the remaining allegations contained in paragraph 32 and therefore denies the same.

33.    Thus, Northern Trust sent Roseland's ATM card and PIN number allowing for access to that ATM card together and did not take any measures whatsoever to ensure that the packages were received by Roseland personally, or to even record who such package was delivered to, even though it knew that it was not sending the packages to Roseland's home address.

**ANSWER:**    Northern Trust denies the allegations contained in paragraph 33.

34.    The information in Northern Trust's investigation file shows that the packages containing Roseland's ATM card and PIN number were not delivered to a live human being for signature, but were: "left at front door" at 11:57 a.m. after first having been attempted to be delivered at 9:57 a.m.

**ANSWER:**    Northern Trust admits the allegations contained in paragraph 34.

35.    Roseland asked about Northern Trust's security procedures for sending replacement cards without requiring Plaintiff to personally activate the card by telephone or in person, and using a password or some other personal identifying information to activate the card. Northern Trust's reason for having no security procedures whatsoever was that it was convenient to send Roseland a "live" card and the PIN number needed to activate it at the same time.

**ANSWER:**    Northern Trust lacks sufficient knowledge to admit or deny the allegations

contained in the first sentence of paragraph 35 and therefore denies the same. Northern Trust denies the remaining allegations of paragraph 35.

36.     Adding to the stress of having his account drained of all his money, (in excess of $13,000.00), due to Northern Trust's failure to protect his account, Roseland received a telephone call from Janice Malmquist in Northern Trust's fraud department who interrogated him about where he had been staying in Florida and who resided there. She also asked Roseland for personal pictures of his family to rule them out as persons suspected of using his ATM card. Although insulted and outraged at the implication of her request, Roseland complied.

**ANSWER:**   Northern Trust admits that Janice Malmquist investigated Plaintiff's claim. In connection with that investigation, Ms. Malmquist interviewed Plaintiff and received photographs from Plaintiff. Northern Trust lacks sufficient knowledge to admit or deny the remaining allegations contained in paragraph 36 and therefore denies the same.

37.     On January 28, 2008, Roseland filled out another affidavit disputing the withdrawals and charges on his account with the bank and provided it with a written statement and the police report he had filed on the matter.

**ANSWER:**   Northern Trust admits that on or about January 28, 2008 Plaintiff submitted an affidavit disputing certain withdrawals on his account. Northern Trust lacks sufficient knowledge to admit or deny the remaining allegations contained in paragraph 37 and therefore denies the same.

38.     When Northern Trust failed to rectify the problem or indicate what would happen, Roseland called his personal banker, Vicki Shields on February 11, 2008 for an update on his dispute and to find out when his account would be credited.

**ANSWER:**   Northern Trust denies the allegations contained in paragraph 38.

39.     Vicki Shields told Roseland that his dispute was rejected and that Northern Trust had already sent him a letter describing the circumstances on February 7, 2008. As Roseland had not received the letter, he asked her to explain why his dispute was rejected, but she refused.

When Roseland pressed the issue, he was transferred to Janice Malmquist.

**ANSWER:**    Northern Trust admits that it sent a letter to Plaintiff on February 7, 2008, outlining its conclusion that the disputed transactions were valid.  Northern Trust also admits that Plaintiff contacted Janice Malmquist.  Northern Trust lacks sufficient knowledge to admit or deny the remaining allegations contained in paragraph 39 and therefore denies the same..

40.    Ms. Malmquist also refused to explain the reasons that his dispute was rejected and told him "It's all spelled out in the letter. You should get it in the next day or two." As she would not explain what happened he asked to be transferred to someone who would.

**ANSWER:**    Northern Trust admits that Plaintiff spoke with Ms. Malmquist regarding his dispute.  Northern Trust lacks sufficient knowledge to admit or deny the remaining allegations contained in paragraph 40 and therefore denies the same.

41.    Roseland was then transferred to David Villapondo, manager of the ATM dispute department. However, Mr. Villapondo was no different. He also refused to provide Roseland with an explanation, and referred Roseland to the letter that he never received. Roseland asked Mr. Villapondo to fax a copy of the alleged letter. Mr. Villapondo claimed that he didn't have a copy, but that he would send it.

**ANSWER:**    Northern Trust admits that Plaintiff spoke with David Villalpando regarding his dispute.  Northern Trust further admits that it caused a copy of the letter that was mailed on February 7, 2008 to be faxed to Plaintiff pursuant to his request.  Northern Trust lacks sufficient knowledge to admit or deny the remaining allegations contained in paragraph 41 and therefore denies the same.

42.    Sometime after February 11, 2008, Roseland finally received a copy of Northern Trust's letter denying his dispute because the card was delivered to the address where Roseland was staying in Florida, and that someone at the home had authorization to use the card. The letter further indicated that Roseland could request that Northern Trust provide him with documentation relating to its review of the matter.

**ANSWER:**    Northern Trust admits that it denied Plaintiff's claim for the reasons stated in the February 7, 2008 letter.  Northern Trust lacks sufficient knowledge to admit or deny the remaining allegations contained in paragraph 42 and therefore denies the same.

43.    Northern Trust's letter instructed Roseland to call Vicki Shields, the person that previously refused to discuss his dispute, for further explanation.

**ANSWER:**    Northern Trust admits that the February 7, 2008 letter identifies Vickie Shields as one of the persons to contact should Plaintiff have questions.  Northern Trust denies the remaining allegations in paragraph 43.

44.    Roseland then called Vicki Shields to contest the determination. However, she informed him that she was "out of the loop on this matter and had not received any additional information."

**ANSWER:**    Northern Trust admits that Roseland called Vickie Shields.  Northern Trust lacks sufficient knowledge to admit or deny the remaining allegations contained in paragraph 44 and therefore denies the same.

45.    Roseland also called Ms. Malmquist and Mr. Villapondo, leaving voicemail messages that have not been responded to.

**ANSWER:**    Northern Trust lacks sufficient knowledge to admit or deny the allegations contained in paragraph 45 and therefore denies the same..

46.    Roseland again called Vicki Shields and told her that he wanted information regarding Northern Trust's rejection of his dispute, and all she could say was that the investigation was ongoing, but as of now, Northern Trust felt that the transactions were valid.

**ANSWER:**    Northern Trust admits that Roseland called Vickie Shields.  Northern Trust lacks sufficient knowledge to admit or deny the remaining allegations contained in paragraph 46 and therefore denies the same.

47.    Roseland responded to the Northern Trust's February 13, 2008 letter, asking for copies of the documentation that was used in making its determination. In response, Northern Trust sent Roseland: 1) verification of his mother's address; and 2) copies of the delivery logs that the packages were delivered.

**ANSWER:**    Northern Trust admits it received a letter from Plaintiff dated February 13, 2008 requesting documentation.  Northern Trust admits that it provided Plaintiff with delivery logs and verification of the Florida addresses provided to it by Plaintiff.  Northern Trust denies any

remaining allegations contained in paragraph 47.

48.    Eventually, Roseland was able to get in touch with Ms. Malmquist, who reviewed the pictures of Roseland's family to find out if they were shown on any of the ATM surveillance tapes from the machines where the disputed ATM transactions took place.

**ANSWER:**    Northern Trust admits the allegations on paragraph 48.

49.    On February 25, 2008, Ms. Malmquist informed Plaintiff that Northern Trust had no evidence that any of Roseland's family members appeared in any footage from the time when the transactions took place. Ms. Malmquist further informed Plaintiff that she had no other information, that her part in the matter was done, and it was now out of her hands. Roseland was told to contact Vicki Shields if he had any more questions.

**ANSWER:**    Northern Trust admits that Plaintiff contacted Ms. Malmquist on or about

February 25, 2008.  Northern Trust denies the remaining allegations contained in the first

sentence of paragraph 49.  Northern Trust lacks sufficient knowledge to admit or deny the

remaining allegations contained in paragraph 49 and therefore deny the same.

50.    Roseland then called Vicki Shields on February 25, 2008, and was told that even though: 1) the bank had no signature for the receipt of the ATM card; and 2) there was no footage of the Plaintiff or any of the Plaintiff's family members having used the ATM at issue for the disputed transactions, that the bank had determined that the transactions were valid because the card was sent to an address supplied by Plaintiff.

**ANSWER:**    Northern Trust admits that Plaintiff contacted Vickie Shields on or about

February 25, 2008.  Northern Trust denies the remaining allegations contained in paragraph 50.

**COUNT I**
**VIOLATION OF EFTA AND REGULATION E**

51.    Plaintiff incorporate herein by reference paragraphs 1-50.

**ANSWER:**    Northern Trust incorporates herein its answers to paragraphs 1 – 50.


52.    Plaintiff's ATM card is governed by the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.*

**ANSWER:**    Northern Trust admits the allegations contained in paragraph 52.


53.    The stated purpose of the Electronic Funds Transfer Act, 15. U.S.C. § 1693, *et. seq.* is as follows:

> It is the purpose of this subchapter to provide a basin framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems. <u>The primary objective of this subchapter, however, is the provision of individual consumer rights</u>. 15 U.S.C. § 1693(b)

(Emphasis added).

**ANSWER:**    Northern Trust admits that the EFTA contains the sentences quoted in paragraph 53.


54.    Section 15 U.S.C. § 1693f(a) of the Act provides that a consumer may dispute, either orally or in writing, errors on his or her account within 60 days of the documentation of such error having been transmitted to the consumer.

**ANSWER:**    Northern Trust admits the allegations contained in paragraph 54.

55.    Under 15 U.S.C. § 1693f(f), an error consists of, among other things, "an unauthorized electronic fund transfer."

**ANSWER:**    Northern Trust admits the allegations contained in paragraph 55.

56.    In this case, the error was a series of unauthorized electronic fund-transfers caused by Northern Trust where Northern Trust sent Roseland's ATM card and the PIN number together, without providing adequate security measures for the ATM card, including any requirement that Roseland sign for the card or personally activate the card. As a result, some unknown person stole Roseland's ATM card and PIN number, and drained the funds from Roseland's account.

**ANSWER:**    Northern Trust denies the allegations contained in paragraph 56.

57.    The unauthorized electronic fund transfers of which Roseland complained and disputed to Northern Trust constitute' "errors" under EFTA. The fact that Roseland never made these charges is evidenced by, among other things, that he never received the card, he never activated the card, and that the withdrawals occurred from sites in Florida when Roseland was in Chicago, Illinois.

**ANSWER:**    Northern Trust denies the allegations contained in paragraph 57.

58.    On January 25, 2008, Roseland disputed the unauthorized transactions to Northern Trust, both orally and in writing.

**ANSWER:**    Northern Trust admits the allegations contained in paragraph 58.

59.    In response to the dispute, according to Section 15 U.S.C. § 1693f(a)(3), "the financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days."

**ANSWER:**    Northern Trust denies that any error occurred with respect to Plaintiff's account.

Northern Trust admits that the EFTA contains the sentences quoted in paragraph 59.

60.    On information and belief, Northern Trust did not mail the results of its investigation under 15 U.S.C. § 1693f(a)(3) until after February 9, 2008.

**ANSWER:**    Northern Trust denies the allegations contained in paragraph 60.

61.    Upon completing its investigation and finding an error, Section 15 U.S.C. § 1693f(b) of the Act requires that the financial institution correct the error subject to Section 15 U.S.C. § I693g, including crediting interest where applicable. See 15 U.S.C. § 1693f(b):

> **(b) Correction of error, interest**
> If the financial institution determines that an error did occur, it shall promptly, but in no event more than one business day after such determination, correct the error, subject to section 1693g of this title, including the crediting of interest where applicable.

**ANSWER:**    Northern Trust denies that any error occurred with respect to Plaintiff's account.

Northern Trust admits that the EFTA contains the sentences quoted in paragraph 61.

62.    Northern Trust did not correct the error in accordance with Section 15 U.S.C. § 1693f(b).

**ANSWER:** Northern Trust denies that any error occurred with respect to Plaintiff's account and

denies the allegations contained in paragraph 62

63. Under Section 15 USC § 1693f(c) of the Act, Northern Trust could have provisionally
recredited the Roseland's account as set forth below:

> **(c) Provisional recredit of consumer's account**
> If a financial institution receives notice of an error in the manner and within the
> time period specified in subsection (a) of this section, it may, in lieu of the
> requirements of subsections (a) and (b) of this section, within ten business days
> after receiving such notice provisionally recredit the consumer's account for the
> amount alleged to be in error, subject to section 1693g of this title, including
> interest where applicable, pending the conclusion of its investigation and its
> determination of whether an error has occurred. Such investigation shall be
> concluded not later than forty-five days after receipt of notice of the error. During
> the pendency of the investigation, the consumer shall have full use of the funds
> provisionally recredited.

**ANSWER:**    Northern Trust denies that any error occurred with respect to Plaintiff's account.

Northern Trust admits that the EFTA contains the sentences quoted in paragraph 63.

64.    Northern Trust did not provisionally recredit the Plaintiff's account in accordance
with Section 15 U.S.C. § 1693f(c) of the Act.

**ANSWER:**    Northern Trust denies that any error occurred with respect to Plaintiff's account.

Northern Trust admits that it did not provisionally recredit the Plaintiff's account in February

2008.

65.    Northern Trust did not make a good faith investigation of the alleged errors to
Roseland's account.

**ANSWER:**    Northern Trust denies the allegations contained in paragraph 65.

66.    Roseland is entitled to treble damages as: 1) Northern Trust did not provisionally
recredit Roseland's account within the ten-day period specified in 15 U.S.C. § 1693f(c); and 2)
Northern Trust did not make a good faith investigation of the errors on Roseland's account. *See*
15 U.S.C. § 1693f(e).

**ANSWER:**    Northern Trust denies the allegations contained in paragraph 66.

67.    Northern Trust did not have a reasonable basis for believing Roseland's account was not in error.

**ANSWER:**    Northern Trust denies the allegations contained in paragraph 67.

68.    Roseland is entitled to treble damages as: 1) Northern Trust did not provisionally recredit Roseland's account within the ten-day period specified in 15 U.S.C. § 1693f(c); and 2) Northern Trust did not have a reasonable basis for believing Roseland's account was without error. *See* 15 U.S.C. § 1693f(e).

**ANSWER:**    Northern Trust denies the allegations contained in paragraph 68.

69.    Northern Trust knowingly and willfully concluded that the Roseland's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to Northern Trust at the time of its investigation. Roseland is therefore entitled to treble damages. *See* 15 U.S.C. § 1693f(e).

**ANSWER:**    Northern Trust denies the allegations contained in paragraph 69.

70.    As a result of Northern Trust's actions and inactions as set forth above, Plaintiff is entitled to damages under Section 15 U.S.C. § 1693m(a) for his actual damages, his statutory damages up to $1,000.00, treble damages, and his reasonable attorneys fees and costs.

**ANSWER:**    Northern Trust denies the allegations contained in paragraph 70.

## AFFIRMATIVE DEFENSES

1.    Northern Trust made a good faith investigation into the alleged errors in Plaintiff's account.

2.    Northern Trust had a reasonable basis for believing Plaintiff's account was without error.

3.    Northern Trust's conclusion that Plaintiff's account was not in error was reasonably drawn from the evidence available to it at the time of the good faith investigation.

Respectfully submitted,


_____s/ Gary S. Caplan_____
Gary S. Caplan (ARDC # 6198263)
Kendric M. Cobb (ARDC # 6282673)
REED SMITH LLP
10 South Wacker Drive
Chicago, IL 60606
Tel: 312-207-1000
Fax: 312-207-6400

*Counsel for Northern Trust Corporation*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that he caused a true and correct copy of the attached Answer and Affirmative Defenses to be served upon the following counsel via the Court's ECF system upon filing:

Lance A. Raphael
Stacy M. Bardo
Allison Krumhorn


                             __ s/ Kendric M. Cobb_____